```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
J & J SPORTS PRODUCTIONS, INC.,                               :
                                                              :     REPORT AND RECOMMENDATION
                                    Plaintiff,                :     19 Civ. 5113 (AMD) (VMS)
                                                              :
                -against-                                     :
                                                              :
TRUNG DANG, individually and d/b/a EL                         :
TEQUILERO II, and EL TEQUILERO BAR &                          :
RESTAURANT II, INC., an unknown business                      :
entity d/b/a EL TEQUILERO II,                                 :
                                                              :
                                    Defendants.               :
------------------------------------------------------------- x
```

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff J & J Sports Productions, Inc. ("J & J" or "Plaintiff") commenced this action against Defendants Trung Dang ("Mr. Dang"),[1] individually and d/b/a El Tequilero II, and El Tequilero Bar & Restaurant II, Inc. ("El Tequilero" or "Defendant") d/b/a El Tequilero II, alleging that they unlawfully intercepted a transmission of the boxing match between Saul Alvarez and Liam Smith held on September 17, 2016, including the undercard or preliminary bouts (the "Program"), and broadcasted it in violation of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553, 605.

Presently before the Court, on referral from the Honorable Ann M. Donnelly, is Plaintiff's motion for a default judgment against Defendant El Tequilero for its failure to answer or otherwise respond to the complaint. For the following reasons, the Court respectfully recommends that Plaintiff's motion be denied, and the case dismissed without prejudice and with leave to amend.

---

[1] Plaintiff voluntarily dismissed Mr. Dang from this action on March 16, 2021. See ECF No. 22.

I.  BACKGROUND

   A.  Factual History

The following fact allegations are drawn from the Complaint ("Compl."), see ECF No. 1, and are accepted as true for purposes of this Report as to liability.

J & J is a California corporation with its principal place of business in San Jose, California.  See Compl. ¶ 6.  Plaintiff alleges that El Tequilero Bar & Restaurant is an "unknown business entity d/b/a El Tequilero II."  See id. ¶ 7.  Mr. Dang is alleged to be the President and Principal of El Tequilero Bar & Restaurant, which owned and operated the commercial establishment doing business as El Tequilero II, operating at 1915 Coney Island Ave., Brooklyn, NY 11230.  See id. ¶ 9.

J & J entered into a license agreement (the "License Agreement") with Golden Boy Promotions, LLC through which J & J was granted the exclusive nationwide commercial closed-circuit distribution rights to the Program telecast on September 17, 2016.  See Compl. ¶ 19; id. License Agreement, Ex. A.[2]  The License Agreement grants J & J the exclusive license to show the Program, with limitations.  It permits J & J to, inter alia, exhibit the "live English language telecast" within a specific geographic area, including the fifty states of the United States of America, but only at commercial outlets "with a fire code occupancy capacity, not to exceed 500 persons per outlet."  See License Agreement at 1.  It restates the broadcast language limitation,

---

[2] The License Agreement was attached to the Complaint and is uncontroverted; thus, it may be considered in determining this motion.  See generally Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (upholding liability determination made based on "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs").

reiterating that the license does not "include the right to exhibit the [Program] in any language other than English (which is expressly preserved by [Golden Boy Productions, LLC])." See id.

Under the License Agreement, J & J entered into sublicensing agreements with commercial entities such as theaters, arenas, bars, clubs, lounges and restaurants, granting these entities limited sublicensing rights, including the right to publicly exhibit the Program within those establishments. See Compl. ¶¶ 19-20. A commercial establishment in New York could only lawfully exhibit the Program if it was contractually authorized to do so by J & J. See id. ¶ 21. Transmission of the program was scrambled and had to be decoded using electronic decoding equipment. See id. ¶ 24. The transmission originated via satellite uplink, and, subsequently, was re-transmitted to cable systems and satellite companies via satellite signal. See id. ¶ 24. J & J provides a commercial establishment authorized to receive the program with the decoding equipment and information necessary to unscramble reception of the Program for that establishment. See id. ¶ 25.

Defendants did not contract with J & J or pay the commercial fee, alleged to be $1,800, to broadcast the program. See id. ¶ 28. Plaintiff alleges that the Program was displayed on four television screens at El Tequilero II, and that alcoholic and nonalcoholic beverages were sold to patrons in the establishment the night of the broadcast. See id. ¶¶ 26-27.

**B. Procedural History**

On September 9, 2019, J & J brought suit against Defendants, asserting two causes of action based on violations of the FCA for the (1) unauthorized interception, reception, publication and/or exhibition of satellite communications in violation of 47 U.S.C. § 605(a), see Compl. ¶¶ 29-37; and (2) unauthorized interception or receipt of programming over a cable system in violation of 47 U.S.C. § 553(a), see id. ¶¶ 38-45. Defendants were served, see ECF

No. 5, and upon their failure to answer or otherwise respond to the Complaint, J & J requested and received a certificate of default from the Clerk of the Court. See ECF Nos. 7, 8. Plaintiff filed its first motion for default judgment on May 18, 2020. See ECF No. 12. By electronic Order dated November 4, 2020, this Court scheduled a telephone conference with the parties for November 24, 2020, setting forth specific issues for discussion. This Order advised Defendants that they could participate in the call, and warned that failure to participate or oppose the motion might result in a judgment entered in Plaintiff's favor. See Elec. Order of 11/4/2020. By letter dated November 12, 2020, J & J acknowledged various deficiencies in its filings regarding, inter alia, service upon Mr. Dang and service of its motion papers, and sought leave to withdraw its first motion for default judgment. See ECF No. 16. This request was granted the next day. See Elec. Order of 11/13/2020.

The Court held a telephone conference on November 24, 2020, during which Defendants failed to appear despite notice having been sent to them about the conference. See ECF Nos. 13, 14. Given J & J's November 12th letter, the Court ordered that the Clerk's entry of default, ECF No. 8, be vacated, and directed Plaintiff to re-serve Defendants by January 29, 2021, see Elec. Status Report Order of 11/24/2020. Plaintiff complied and submitted affidavits of service reflecting the recent service on Defendants. See ECF Nos. 18, 19.

On February 8, 2021, the Court issued an Order which informed Defendants that failure to participate in the lawsuit could result in entry of a default judgment against them for money damages, and directed them to answer or otherwise respond to the Complaint by March 12, 2021. See Elec. Scheduling Order of 2/8/2021. The Order further set a telephone conference for March 10, 2021. See id. A copy of this Order was mailed to Defendants by the Court. Defendants failed to answer or otherwise respond to the Complaint by the deadline, and further failed to

4

appear at the telephone conference conducted on March 10, 2021.  At that proceeding, the Court granted Plaintiff leave to renew its motion for a default judgment against the corporate defendant, El Tequilero.  In conformance with discussions held between the Court and Plaintiff regarding service issues, Plaintiff withdrew its claims against Mr. Dang.  See Notice of Voluntary Dismissal, ECF No. 22.

A Clerk's entry of default was issued on March 25, 2021, see ECF No. 23, and J & J made the instant motion for default judgment on April 14, 2021, see ECF No. 25.  The motion was referred to this Court by District Judge Donnelly for a report and recommendation.

## II.  LEGAL STANDARDS

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  See Moulton Masonry & Constr., 779 F.3d at 186 (citing Fed. R. Civ. P. 55).  First, where a party has failed to plead or otherwise defend against an action, the Clerk of the Court must enter a certificate of default against that party by making a notation on the record.  See Fed. R. Civ. P. 55(a).  Second, once a default has been entered against a party, and if the defaulting party still fails to appear or to move to set aside the default, the court may enter a default judgment against that party.  See Fed. R. Civ. P. 55(b).

Where a defendant fails to respond to the complaint, entry of a default judgment is ordinarily warranted.  See SEC v. Anticevic, No. 05 Civ. 6991 (KMW), 2009 WL 4250508, at *6 (S.D.N.Y. Nov. 30, 2009) (citing Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)).  The Court must determine, however, whether plaintiff was effectively served with process before entering a default.  See Omni Capital Int'l, Inc. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) (noting that "[b]efore a federal court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied"); Sik Gaek, Inc. v. Yogi's II, Inc., 682 F.

App'x 52, 54 (2d Cir. 2017) ("[a]mong other things, the moving party must demonstrate that entry of default is appropriate, which requires a showing that the nonappearing party was effectively served with process"). A process server's affidavit is ordinarily prima facie evidence of proper service. See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002).

Upon a defendant's default, that defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 58 (2d Cir. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Labarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks & citation omitted); see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (the court "need not agree that the alleged facts constitute a valid cause of action" (internal quotation marks & citation omitted)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (acknowledging the court's authority, even after default, to determine whether plaintiff has stated a cause of action). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).

### III. ANALYSIS

#### A. Service Of The Summons And Complaint

"Proper service requires that a summons be served along with a copy of the complaint. Fed. R. Civ. P. 4(c)." Crawford v. U.S. Sec. Assocs., No. 19 Civ. 105 (PGG) (RWL), 2019 WL 8128253, at *3 (S.D.N.Y. Sept. 11, 2019), report & recommendation adopted, 2020 WL 61171

6

(S.D.N.Y. Jan. 6, 2020). The Federal Rules allow service to be made in accordance with the service rules of the state where the district is located or where service is made. Fed. R. Civ. P. 4(e)(1). New York law permits personal service upon a corporation made in accordance with section 306 of the Business Corporation Law ("BCL"). N.Y. C.P.L.R. § 311(a)(1). The BCL provides for service of process on the Secretary of State as the agent of a domestic corporation "by personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee." N.Y. Bus. Corp. Law § 306(b)(1). "Service of process on such corporation shall be complete when the secretary of state is so served." Id.

J & J served corporate defendant El Tequilero via service on the New York Secretary of State on September 17, 2019. See Affidavit of Service, ECF No. 5. According to the affidavit of service, the process server delivered true copies of the summons and Complaint as well as the statutory service fee in the amount of $40.00 to "Nancy Dougherty as Business Document Specialist of the Secretary of State of New York State" located at 99 Washington Ave., Albany, NY 12207. Id. This service complies with the requirements set forth under New York law.[3]

---

[3] Plaintiff's renewed attempt to serve the corporate defendant, see ECF No. 19, would not, on its own, constitute good service because the summons was not included in the documents provided to the Secretary of State. The Court's direction regarding re-service, however, was aimed at curing deficiencies of service upon the individual defendant, who has since been dismissed from this action. As the initial service on the corporate defendant was sufficient, the subsequent deficient service of the same complaint is immaterial.

### B. J & J's Standing To Sue Defendant

Plaintiff J & J is no stranger to cases in which the defendant has failed to answer or otherwise respond to a complaint, resulting in its pursuit of a default judgment. See J & J Sports Prods., Inc. v. Right Brain Rest., Inc., No. 17 Civ. 1191 (ILG), 2017 WL 4535928, at *1 (E.D.N.Y. Oct. 10, 2017) (noting that, J & J "has initiated hundreds of cases in this District, and has moved for default judgment in over one hundred of them"). Despite these numerous opportunities to properly draft a complaint and/or seek a default judgment, J & J has an uneven track record litigating its claims. Plaintiff's repeated errors in pursuing these litigations, both procedural and substantive, have been catalogued in detail in prior decisions in this District. See, e.g., J & J Sports Prods., Inc. v. Ferreiras, No. 15 Civ. 6546 (SJB), 2018 WL 6168557, at *1 (E.D.N.Y. Nov. 20, 2018) (listing the various bases used by judges in this District for denying J & J's motions for default judgment and collecting cases); see also J & J Sports Prods., Inc. v. Brentwood Veteran War Mem'l, Inc., No. 17 Civ. 6833 (ADS) (GRB), 2019 WL 4126469, at *2 (E.D.N.Y. Aug. 8, 2019) (characterizing J & J as "a frequent litigant noted for slapdash filings, intransigence in the face of repeated judicial criticism, and frequent disregard of law, procedure, and rules").

In assessing Plaintiff's difficulties in obtaining a default judgment as relevant to the current proceeding, this Court may consider the report and recommendation issued in February 2020 in another case brought by Plaintiff in which it was represented by the same counsel. See J & J Sports Prods., Inc. v. Vergara, No. 19 Civ. 2382 (FB) (VMS), 2020 WL 1034393 (E.D.N.Y. Feb. 6, 2020), report & recommendation adopted, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020). In Vergara, this Court found, inter alia, that J & J failed to establish that it had valid claims against the defendants. Vergara, 2020 WL 1034393, at *8. This finding was based on the

express language in the license agreement limiting Plaintiff's "exclusive" right to exhibit the Program to telecasts made in the English language. Noting that the complaint was "devoid of allegations regarding the language of the Program that was allegedly intercepted and broadcast by Defendants," the Court determined that "Plaintiff has not pleaded that its rights were violated." Id. at *9. As the complaint's allegations "fail[ed] to establish, as a matter of law, that J & J has standing to sue Defendants for violating J & J's rights under the FCA and that J & J has suffered any injury," this Court recommended that the motion for default judgment be denied, and the complaint dismissed without prejudice to further amendment. Id.[4]

With the exception of the names of the Defendants and the specifics of the Program broadcast, the Complaint in this case is the same as that in Vergara. J & J's right to pursue this claim derives from its contractual rights under the License Agreement, an agreement that limits Plaintiff's rights to English language broadcasts. As in Vergara, Plaintiff has failed to adequately plead entitlement to proceed by failing to allege facts regarding the language in which the allegedly violative broadcast was made. The Complaint also fails because it does not allege the size of Defendant's venue, which is relevant given the License Agreement's restrictive language limiting Plaintiff's rights to venues holding fewer than 500 people. See License Agreement at 1.

It should be emphasized that Plaintiff's current motion for a default judgment was filed on April 14, 2021, over a year after resolution of Plaintiff's motion for a default judgment in

---

[4] Plaintiff did not file objections to the report and recommendation. The District Court adopted the recommendation and afforded Plaintiff thirty days to file an amended complaint. See Vergara, 2020 WL 1031756, at *1. Plaintiff did not amend its complaint, but filed a notice of voluntary dismissal. See 19 Civ. 2382, ECF No. 13.

Vergara. Not only was Plaintiff on notice of the decision in Vergara, given that the same counsel handled both cases, but this Court specifically directed Plaintiff to review that decision, albeit on a different issue, by Order dated November 4, 2020, and Plaintiff's counsel cited Vergara in its response to that Order. See ECF No. 16. Plaintiff did not amend the Complaint to cure the pleading deficiencies identified in Vergara. Plaintiff also does not mention the Vergara case in its memorandum in support of its application for a default judgment filed over a year after the issuance of both the report and recommendation and the adoption Order in Vergara. See ECF No. 25-1.

For the same reasons set forth in Vergara and herein, it is respectfully recommended that Plaintiff's motion be denied for failure to establish liability against Defendant,[5] and that the Complaint be dismissed for lack of standing with leave to replead.

## IV. CONCLUSION

For the reasons stated above, this Court respectfully recommends that Plaintiff's motion for a default judgment be denied, and that the Complaint be dismissed without prejudice. This Court further respectfully recommends that Plaintiff be given thirty (30) days from the adoption of this Report and Recommendation, if it is adopted, to replead if it can address the issues discussed above.

## V. OBJECTIONS

This Report and Recommendation will be filed electronically. Chambers will mail a copy to Defendant at the following addresses: (1) El Tequilero Bar & Restaurant II, Inc., 1114

---

[5] Given these pleading deficiencies in the Complaint, further analysis of Plaintiff's alleged entitlement to a default judgment is unnecessary.

Avenue U, Brooklyn, NY 11223; and (2) El Tequilero Bar & Restaurant II, Inc., c/o Henry Anthony Roper, 1915 Coney Island Avenue, Brooklyn, NY 11230.

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within this time period will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.")

Dated:  Brooklyn, New York
        October 28, 2021

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge